IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JA ADVISORY, LLC<br>3759 CASTLEGATE DRIVE, N.W.<br>ATLANTA, GEORGIA  30327<br><br>      Plaintiff,<br><br>  v.<br><br>BOSTOCK COMPANY, INC.<br>D/B/A SNAPCAB<br>175 TITUS AVENUE<br>#200<br>WARRINGTON, PA  18976<br><br>      Defendant. | CIVIL ACTION NO.<br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

## CIVIL ACTION

Plaintiff, JA Advisory, LLC ("JA Advisory") complains against Defendant Bostock Company, Inc. d/b/a SnapCab ("SnapCab") as follows:

### PARTIES

1. Plaintiff JA Advisory, LLC is a Georgia Limited Liability Corporation with a principal place of business at Atlanta, Fulton County, Georgia.

2. Defendant Bostock Company, Inc. is a Pennsylvania Corporation with a principal place of business at Warrington, Bucks County, Pennsylvania and as related to this Complaint does business as SnapCab.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) based on diversity of citizenship between Plaintiff and Defendant. The amount in controversy, exclusive of interest and costs, exceeds $75,000, as specified by 28 U.S.C. § 1332(a).

4.     The Court has personal jurisdiction over Defendant and venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Defendant has a principal place of business in this District, a substantial part of the events giving rise to the claims set forth occurred within this District, and the parties agreed in writing that venue lies in the State of Pennsylvania.

## ALLEGATIONS COMMON TO ALL COUNTS

5.     This matter arises from the Defendant's breach of the express and implied covenants of a written Agreement to pay sales commissions to Plaintiff.

6.     On or about July 1, 2017 the Plaintiff and Defendant entered into a Sales Representative Agreement (the "Agreement") relating to the conceptualization, prototyping, design, engineering, marketing and sales of the so-called "SnapCab Pod product line". The Agreement is attached hereto and incorporated herein as Exhibit A.

7.     The "SnapCab Pod" product is a "Pod", an easily assembled, moveable and configurable office module for providing individual and team privacy and quiet in an open office environment.

8.     Plaintiff created and introduced the Pod to Defendant in April 2016 and, in collaboration with Defendant pursuant to the July 2017 Agreement, was responsible for determining and directing the overall marketing and sales of the Pods.

9.     Defendant, in collaboration with Plaintiff pursuant to the July 2017 Agreement, was responsible for the engineering, manufacturing, financing and sales of the Pods.

10.    Between April 2016 and continuing to date Plaintiff led and directed Defendant through the development of the Pods from early prototypes to production ready units, provided market develop guidance to Defendant, and participated in trade shows and in meeting with key prospective customer accounts.

11898437-1

11. Upon information and belief, in March 2018 Defendant started negotiating and finally entered into an exclusive distribution agreement for the sale of Pods in commercial office and education channels in North America with a leading nationwide distributor of office furniture.

12. In March 2018, Defendant claimed that there was a "misunderstanding" over the commission terms of the Agreement such that Plaintiff was not entitled to any commissions flowing from the agreement Defendant had negotiated or was in the process of negotiating with current and other prospective customers.

13. At about the same time, Defendant cancelled weekly update calls to review the status of all prospective customers and product and production updates that had previously been held and failed to hold monthly status meetings as required by Paragraph 2 of the Agreement.

14. Despite Plaintiff's demands, Defendant has failed and refuses to provide information to Plaintiff regarding the status of current and prospective customers.

15. Defendant has informed Plaintiff that it will not pay commissions to Plaintiff for sales to the distributor referred to in Paragraph 11 of this Complaint and to other unidentified similarly situated current and/or prospective customers.

16. The Defendant has informed the Plaintiff that it will pay no commissions pursuant to Paragraph 3B of the Agreement unless Plaintiff has "closed" or "completed" the sale to a customer that was originated by Defendant.

17. The Defendant has informed the Plaintiff that it will only pay commissions for sales to customers that were "closed" or "completed" by the Plaintiff prior to the termination of the Agreement.

18. The Defendant has informed the Plaintiff that upon termination of the Agreement Plaintiff's ownership of the Intellectual Property to be jointly shared by the parties pursuant to Paragraph 1A of the Agreement expires.

19. By letter dated May 11, 2018 Defendant purported to terminate the Agreement effective 90 days thereafter for no reason pursuant to Paragraph 7 of the Agreement.

20. Defendant has failed and refused to attempt in good faith to resolve disputes or claims arising out of the Agreement "through negotiations between a director of each of the Parties with authority to settle the relevant dispute" pursuant to Paragraph 6 of the Agreement.

21. The purported termination referred to in Paragraph 16 of this Complaint is null and void because of Defendant's failure to abide by Paragraph 6 of the Agreement.

## Count I - Breach of Contract

22. Plaintiff repeats and realleges paragraphs 1-21 as though fully set forth herein

23. The Defendant has breached the Agreement with Plaintiff by failing to provide customer status updates and hold monthly meetings, failing to provide Plaintiff with information regarding the status of current and prospective customers, failing to pay commissions when due, and failing to negotiate disputes in good faith.

24. Plaintiff has suffered damages in excess of $75,000.000 as a result of Defendant's breach.

## Count II - Good Faith and Fair Dealing

25. Plaintiff repeats and realleges paragraphs 1-24 as though fully set forth herein.

26. A duty of good faith and fair dealing is implied in the Agreement between Plaintiff and Defendant.

27. The Defendant has breached the Agreement and its duty of good faith and fair dealing by informing the Plaintiff that it will pay no commissions pursuant to Paragraph 3B of the Agreement unless Plaintiff has "closed" or "completed" the sale to a customer that was originated by Defendant.

28. The Defendant has breached the Agreement and its duty of good faith and fair dealing by informing the Plaintiff that it will only pay commission for sales to customers that were "closed" or "completed" by the Plaintiff prior to the termination of the Agreement.

29. The Defendant has breached the Agreement and its duty of good faith and fair dealing by informing the Plaintiff that upon termination of the Agreement Plaintiff's ownership of the intellectual property expires.

30. Plaintiff has suffered damages in excess of $75,000.000 as a result of Defendant's breach.

### Count III - Penn Statutory Sales Commission Claim

31. Plaintiff repeats and realleges paragraphs 1-30 as though fully set forth herein.

32. The Defendant has failed to pay sales commissions to Plaintiff in violation of the Pennsylvania Statutes Title 43 P.S. Labor, Sections 1471 et. seq.

33. Plaintiff has suffered damages in excess of $75,000.000 as a result of Defendant's failure to pay commissions when due.

### Count IV - Declaratory Judgment

34. Plaintiff repeats and realleges paragraphs 1-33 as though fully set forth herein.

35. A dispute has arisen between Plaintiff and Defendant relating to commissions to be paid pursuant to the Agreement and the rights of the parties' post-termination of the Agreement.

11898437-1

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

(1)  Compensatory damages for Defendant's breach of contract and breach of the implied contract of good faith and fair dealing in an amount in excess of $75,000 plus interest and costs and for such other and further relief as the Court deems appropriate;

(2)  Damages for Defendant's breach of Pennsylvania Statutes Title 43 P.S. Labor, Sections 1471 et. seq. in the amount of twice the sales commissions owed plus interest, costs and attorney's fees; and

(3)  A declaration of the rights of the parties with respect to commission payments and intellectual property.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts so triable.

RAWLE & HENDERSON LLP

By: _____
Fred B. Buck, Esquire
Identification No. 31642
Rawle & Henderson LLP
The Widener Building
One South Penn Square
Philadelphia, PA  19107
(215) 575-4200
fbuck@rawle.com

11898437-1

# EXHIBIT "A"

SnapCab/JA Advisory Confidential



## SALES REPRESENTATIVE AGREEMENT

Effective Date: July 1, 2017

This sales representative Agreement (the "Agreement") is made and entered on July 1, 2017 between Bostock Company, Inc. DBA SnapCab ("SnapCab"), as the "Company" and JA Advisory, as a "Sales Representative" (collectively referred to as the "Parties").

The Parties agree as follows:

1. **SERVICES:**
   A. JA Advisory will collaborate in conceptualization, prototyping, design and engineering of the SnapCab Pod product line. All intellectual property arising from work on the SnapCab Pod will be jointly shared by Parties equally or 50% respectively. Once JA Advisory receives $250,000 in commission or compensation, JA Advisory will transfer their 50% of the intellectual property rights to SnapCab.

   B. SnapCab shall engage JA Advisory as a Sales Representative to promote as its authorized non-exclusive representative the following products of SnapCab: SnapCab Wall, SnapCab Pod, SnapCab Portal and SnapCab Elevator (the "Products").

   C. SnapCab will provide complete documentation and information on the Products for JA Advisory as well as training in the areas of product knowledge, installation practices and all aspects of customer service and fulfillment.

   D. SnapCab will be responsible for all pricing, credit terms and final purchase by the customer. No product will be purchased through JA Advisory.

2. **TERRITORY/PROSPECTIVE CLIENT TARGET AUDIENCE:** JA Advisory, as a Sales Representative, shall determine the method, target industries and audiences, geographic area and means of sales of the Products; taking into consideration exceptions specifically outlined in writing and agreed upon between both Parties. All customers that will be pursued by JA Advisory must be first approved by SnapCab in writing, so as to avoid confusion, duplicated efforts, and to allow for commission payments to be outlined correctly.

   All prospective customers will be recorded and tracked by the Company each month. Parties will have a monthly meeting on the 4th Wednesday of every month (subject to change) to review status of all prospective customers and update the list.

3. **COMMISSIONS:** JA Advisory will receive commissions according to the following plan:
   A. For sales from customers that JA establishes: 10%
   B. For sales from customers that SnapCab establishes: 5%

   JA Advisory will also receive commission for any new business it creates for the SnapCab Elevator product line. Due to the nature of the existing agreements between SnapCab and its existing sales channels for the SnapCab Elevator product line, the commission rate will be as follows:
   A. For sales from customers that JA establishes: 5%

SnapCab/JA Advisory Confidential

      **B.** For sales from customers that SnapCab establishes: 2.5%

After $500,000 in accumulated commission, the rates will decrease by 50% (5% for JA Advisory established customers and 2.5% for SnapCab-established customers). For SnapCab Elevator product line sales, it would decrease to 2.5% for JA Advisory established customers and 1.25% for SnapCab established customers.

Commissions earned by JA Advisory will be paid 50% of their commission upon invoicing the customer and 50% upon receipt of final payment. Payment for all commissions will be made monthly by the 15th day of each month for the preceeding one month.

JA Advisory will forgo its first $30,000 in commission as a contribution toward sampling and start-up costs. Expenses incurred by either party in pursuing sales, will be paid by the party incurring the expenses unless specific, written instructions indicate otherwise.

4. **CONFIDENTIALITY:** Sales Representative acknowledges that he/she may have access to the Company's confidential and proprietary information. Such confidential information may include, without limitation: i) business and financial information, ii) business methods and practices, iii) technologies and technological strategies, iv) marketing strategies and v) other such information as the Company may designate as confidential ("Confidential Information"). Sales Representative agrees to not disclose to any other person (unless required by law) or use for personal gain any Confidential Information at any time during or after the term of this Agreement, unless the Company grants express, written consent of such a disclosure. In addition, Sales Representative will use his/her best efforts to prevent any such disclosure. Confidential information will not include information that is in the public domain, unless such information falls into public domain through Sales Representative's unauthorized actions.

5. **INDEMNIFICATION:** SnapCab agrees that it will defend, indemnify, and hold harmless JA Advisory, and its respective employees, officers, representatives and agents from any and all third party claims, costs, controversies, causes of action, actions, suits, judgments, liens, damages, demands, liabilities, and expenses of whatever kind or nature ("Claims"), directly arising from or relating to any defect in the Product supplied by SnapCab, or any injuries or other damages resulting from a defect in or issue with the Manufactured Product. This does not include any Claims arrising from the Sales Representative's misrepresentation of the product.

6. **DISPUTE RESOLUTION:** The Parties will attempt in good faith to resolve any dispute or claim arising out of or in relation to this Agreement through negotiations between a director of each of the Parties with authority to settle the relevant dispute. If the dispute cannot be settled amicably within fourteen (14) days from the date on which either Party has served written notice on the other of the dispute then the remaining provisions of this Agreement apply.

7. **TERM AND TERMINATION:** The agreement is valid for three (3) consecutieve years from the date the agreement is signed. If sales are more than $1,000,000 in the first three years, both parties agree to extend the agreement by another three (3) years. If sales are more than $2,000,000 in the first three years, both parties agree to extend terms by another five (5) years.

    This Agreement may be terminated for any reason in which good faith Dispute Resolution does not settle a relevant issue, or for no reason by either party upon 90 days written notice,

SnapCab/JA Advisory Confidential

or immediately by either party if (i) JA Advisory fails to perform its duties or materially breaches any obligation in the Agreement, or by JA Advisory (ii) if SnapCab fails to perform such duties outlined in the Sales Representatiave Agreement and the ability of JA Advisory to provide the complete product and service to its customer(s).

8. **RETURN OF PROPERTY:** Upon termination of services, Sales Representative will promptly return, or distroy at Companies request, all drawings, documents and other tangible manifestations of Confidential Information (and all copies and reproductions thereof). In addition, Sales Representative will return any other property and material samples belonging to the Company.

9. **CONTINUING OBLIGATIONS:** Notwithstanding the termination of this Agreement for any reason, the provisions of paragraph 5 of this Agreement will continue in full force and effect following such termination for a period of 1 year.

10. **BINDING EFFECT:** The covenants and conditions contained in the Agreement shall apply to and bind the Parties and the heirs, legal representatives, successors and permitted assigns of the Parties.

11. **CUMULATIVE RIGHTS:** The Parties' rights under this Agreement are cumulative, and shall not be construed as exclusive of each other unless otherwise required by law.

12. **WAIVER:** The failure of either party to enforce any provisions of this Agreement shall not be deemed a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

13. **SEVERABILITY:** If any part or parts of this Agreement shall be held unenforceable for any reason, the remainder of this Agreement shall continue in full force and effect. If any provision of this Agreement is deemed invalid or unenforceable by any court of competent jurisdiction, and if limiting such provision would make the provision valid, then such provision shall be deemed to be construed as so limited.

14. **ENTIRE AGREEMENT:** This Agreement constitutes the entire sales agreement between the Parties and supersedes any prior understanding or representation of any kind preceding the date of this Agreement. There are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the subject matter of this Agreement. This Agreement may be modified in writing and must be signed by both the Company and Sales Representative.

15. **NOTICE:** Any notice required or otherwise given pursuant to this Agreement shall be in writing and mailed certified return receipt requested, postage prepaid, or delivered by overnight delivery service, addressed as follows:

Bostock Company, Inc. DBA SnapCab ("SnapCab")   JA Advisory
The Company:                                    Sales Representative:

175 Titus Avenue
Suite 200
Warrington, PA 18976

Sales Representative Agreement   - 3 -

SnapCab/JA Advisory Confidential

Either party may change such addresses from time to time by providing notice as set forth above.

16. **GOVERNING LAW:** This Agreement shall be governed by and construed in accordance with the laws of the State of Pennslyvania, and the venue for any dispute shall be the courts of the State of Pennsylvania.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed the day and year first written above.

Bostock Company, Inc. DBA SnapCab ("SnapCab")
**THE COMPANY:**

_____
(Signature)
_Caleb Morrison_
(Name – Please Print)
_Vice President_
(Position)


JA Advisory
**SALES REPRESENTATIVE:**

_____
(Signature)

_____
(Name – Please Print)